J. S12038/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| L.B., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1495 MDA 2017 |
| J.W. | : | |

Appeal from the Order Entered September 1, 2017,
in the Court of Common Pleas of Union County
Civil Division at No. CV-17-0268

BEFORE:  LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 20, 2018**

L.B. ("Father") appeals **pro se** from the September 1, 2017 order entered in the Court of Common Pleas of Union County that awarded sole legal and physical custody of T.A.B. ("Child") to J.W. ("Mother").  After careful review, we affirm.

The trial court summarized the factual history of this case, which it gleaned from the custody hearing, as follows:

> The parties met online while Father[1] was living in Florida and Mother was living in Middleburg, Pennsylvania.  Father moved from Florida to Middleburg, Pennsylvania and began residing with Mother.  Mother became pregnant shortly after Father moved to Pennsylvania and [Child] was born January [] 2012.  The parties continued to reside

---

[1] The trial court referred to the parties as "the Father" and "the Mother."  We have omitted the article preceding these party designations.  We have also omitted the article where the trial court referred to Child as "the Child."

together until May of 2015. From here the record is confusing as to exactly what the circumstances were regarding their separation. However, it would appear to the Court that the parties separated in May of 2015. Until June of 2015 [F]ather had supervised visits with [C]hild. [C]hild never spent an overnight with Father. In June of 2015 Mother moved to West Virginia and Father had no contact with [C]hild until September 8, 2015. On September 8, 2015, Father located Mother, her now husband and [C]hild at a convenience store in Middleburg. Father was extremely intoxicated, approached Mother and assaulted her. Apparently Father attempted to take [C]hild in an intoxicated state. Father was driving an automobile and was subsequently arrested for this incident. Father was then incarcerated and remained incarcerated for a period of time. He was then admitted to the 17th Judicial District DUI Treatment Court.

In addition, a Protection from Abuse Order was entered following the September 8, 2015 incident. The Protection from Abuse Order granted Mother custody of [Child].

Prior to the party's separation in May of 2015, Snyder County Children and Youth Services had been involved with the family. In part, it was due to sexual acting out of one of Mother's children that were not fathered by Father of [Child] but resided with the parties. The other reason was due to Father's inappropriate discipline of the one child. In addition, Mother testified that Father's drinking, discipline and anger were problems while they resided together.

It is significant to note that Father failed to disclose his involvement with Snyder County Children and Youth Services on his Criminal Record/Abuse History Verification.

In addition, it became evident that Father was involved with the Florida equivalent of Children and Youth Services and had three (3) children removed

from his custody while he was in Florida and his parental rights were involuntarily terminated to those three children. Again, Father failed to disclose this contact with Children Services on his Criminal Record/Abuse History Verification.

Father has had absolutely no contact with [C]hild since the September 8, 2015 incident. In addition, he has not provided any child support, he has not provided [C]hild with any gifts, cards or anything to acknowledge his paternity or interest in [C]hild until he filed for custody on May 2, 2017. Father testified that he did not want to become involved in his [C]hild's life until he had his own issues addressed. Father testified that he had been in the 17th Judicial District DUI Treatment Court Program and graduated on May 31, 2017. An issue was raised as to whether Father filed for custody after he learned that a Petition to terminate his parental rights was being filed by Mother (Union County Docket No. OC-17-8033). Father testified that that was not his motivation for filing for custody, however the Guardian ad Litem questioned his reasoning given that he had not completed his Treatment Court Program and therefore his statement that he was waiting until he had completed all of his issues until filing for custody was subject to question. Father attempted to explain that he wanted to wait until he was sober, however, the Guardian ad Litem observed that he had been sober since September of 2015 and still had not filed. Father was extremely evasive of the Guardian ad Litem's questions and his actual motivation for filing for custody when he did is a question that is unresolved. In his current situation Father testified that he has been living with his current fiancé, [E.E.] since 2015. It is interesting that [E.E.] has three (3) sons, one (1) is incarcerated in a State Correctional Facility and has been for the last three (3) years and she visits him one (1) time a year. In addition, her other two (2) sons have no contact with her at their request and have not done so since they were in their late teens.

It is also interesting to note that in spite of Father's drug and alcohol issues, [E.E.], his fiancé, has posted alcohol related pictures on Facebook. The Court questions the judgment of [E.E.] given her fiancé's involvement with the Criminal Justice System related to drugs and alcohol.

Father also has four (4) other children. The one at issue in this case, the three (3) referenced earlier where his parental rights were terminated in Florida and one (1) other child that lives in Middleburg, five (5) miles from Father's residence and the child resides with the paternal grandmother. Father has had no contact with this child for twenty-one (21) years. He attempted to reach out to his [m]other apparently, but she has refused to return the contacts. Father did not present any evidence to show that he has done anything in an attempt to support this child or to establish a parental relationship.

In fact, none of Father's family has been involved with [Child]. To the contrary, Mother has developed an extensive support system with her current husband, her mother, pastor and friends. She maintains full time employment and a home that has a stable family situation. It is also significant that Father acknowledged having outstanding arrest warrants from the State of Florida for probation violations in that state. Father has failed to exercise the responsibility in addressing these outstanding warrants and is subject to arrest at any time based on Florida's decisions.

The facts presented to the Court indicate Father has significant drug and alcohol issues, domestic violence issues, violence that may involve [C]hild through discipline at home or assaults in the presence of [C]hild, Father's deceit in failing to disclose his substantial involvement with Children and Youth Services in two (2) states, mental health issues and the fact that he never pursued custody nor shown [sic] any interest in being a father from September 8, 2015 until the filing of this action on

May 4, 2017. In fact, Father had one (1) contact with [C]hild between June of 2015 and the present and that was at a time he was intoxicated and subsequently arrested and incarcerated. Father's testimony was that he doesn't even remember most of that incident.

When queried about why he wants custody he initially stated he "has been a good father[.]" When the Court expressed shock at this statement, Father recanted and admitted he has not been a good father to any of his children. The Court would refer the Pennsylvania Superior Court to the transcript of the custody hearing of September 1, 2017, Pages 97-104 for the Court's analysis of the custody factors set forth in 23 Pa.C.S.A. § 5328.

Trial court opinion, 10/25/17 at 3-7 (citations to notes of testimony omitted).

The trial court set forth the following procedural history:

On May 2, 2017, [Father] filed a Complaint for Custody against [Mother] seeking custody of [Child]. Father filed his Criminal Record/Abuse History Verifications for himself and his fiancé with whom he resides contemporaneously with the filing of the Complaint. The Court initially referred the matter to mediation consistent with local rules however the Court was informed that there was in existence a Protection from Abuse Order entered against Father naming Mother as a protected party and that the matter was not appropriate for mediation. On May 8, 2017, the Court scheduled the matter for a custody conference on June 9, 2017. Mother requested a continuance and the matter was continued until July 7, 2017 for a hearing before the Custody Hearing Officer.

On July 7, 2017, the Court was available and the matter was heard before the undersigned. Based on a review of Father's Criminal Record/Abuse History Verification, it appeared that Father had been

convicted of multiple enumerated offenses under 23 Pa.C.S.A. § [53]29, specifically aggravated assault, terroristic threats, driving under the influence of drugs or alcohol and manufacture, sale, delivery, holding, offering for sale or possession of any controlled substance or other drug or device. The Court conducted the initial evaluation as required pursuant to 23 Pa.C.S.A. § 5329(c) and determined that Father did pose a threat to [C]hild. At the July 7, 2017 proceeding, the Court received additional information indicating domestic violence and a protection from abuse order were issues in this matter although not disclosed by Father.

The Court ordered Father to have an assessment completed in writing and submitted to counsel for Mother and the Guardian ad Litem prior to the hearing. The Court further directed Father that "unless the parties stipulate to the admission of the assessment, the individual conducting the assessment shall be present to testify. Without the assessment the Court shall not award any type of custody to [Father] based on the Court's concerns regarding the safety of [C]hild."

At the July 7, 2017 proceeding the Court appointed a Guardian ad Litem for [C]hild.

On July 26, 2017, the Court ordered a full day custody trial for September 1, 2017. The parties filed the necessary pretrial statements and the Guardian ad Litem filed her Report of the Guardian ad Litem on August 25, 2017. Recommendation 4 of the Guardian ad Litem's Report, stated "Father, prior to any contact with [C]hild, submit an Anger Management Certification as the Guardian ad Litem has some concerns about his ability to control himself, specifically his anger[."]

A hearing was held on September 1, 2017 after which the Court awarded sole legal and physical custody of the minor [C]hild to Mother.

> On September 29, 2017, Father filed his Notice of Appeal and on October 16, 2017 Father filed his Concise Statement of Errors complained of.

*Id.* at 1-3.

The record reflects that the trial court filed its Rule 1925(a) opinion on October 25, 2017. The record further reflects that on November 1, 2017, this court entered an order setting forth the briefing schedule in this case. (Order of court, 11/1/17.) In that order, we directed that Father file his brief on or before December 1, 2017. Father failed to comply. (*Id.* at 1.) As a result of Father's failure to file a timely brief as ordered by this court, this court entered an order on December 28, 2017, directing Father to file a brief no later than 14 days from the date of the order and informing Father that his failure to do so would result in dismissal of his appeal. (Order of court, 12/28/17.) The record reflects that Father filed his brief on January 11, 2017.

Father raises the following issues for our review:

1.  Did error occur when the Court did not properly consider the impact of the [protection from abuse order ("PFA")] on Father's contact with the [C]hild?

2.  Did error occur when the Court rejected an evaluation by a qualified therapist?

3.  Did error occur when the Court ignored a request for a bonding evaluation?

Father's brief at 4.

With respect to our standard of review, it is well settled that:

[t]he appellate court's scope of review in custody cases is of the broadest type. This broad power is limited to the extent that an appellate court may not nullify the fact finding function of the hearing judge. We are empowered to form our own independent deductions and inferences from the facts found by the hearing judge, but may only interfere with the decisions of the hearing court where there has been a gross abuse of discretion. We must determine whether the trial court's factual findings support the trial court's factual conclusions, but we may not disturb these conclusions unless they are unreasonable in light of the court's factual findings.

Our appellate function is to make an independent judgment, based on the testimony and evidence before us, that is in the best interest of the child. We must make an independent examination of the record and make an order on the merits of the case which is right, just and will serve the best interest of the child. After we take full account of the hearing judge's reasoning, still, we must be easy in our own conscience that the judge's award will serve the best interest of the child, or children, in question.

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 19-20 (Pa.Super. 2010) (citations omitted).

In custody disputes, trial courts are statutorily required to consider the 16 factors set forth in the best-interest test when determining the child's

best interest.[2]  **_See_** 23 Pa.C.S.A. § 5328(a) ("[i]n ordering any form of

custody, the court shall determine the best interests of the child by

_____

[2] Section 5328 of the Child Custody Act sets forth the 16-factor best-interest test, as follows:

> **§ 5328.  Factors to consider when awarding custody**
>
> **(a)  Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1)  Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2)  The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (3)  The parental duties performed by each party on behalf of the child.
>
> (4)  The need for stability and continuity in the child's education, family life and community life.

---

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

considering all relevant factors . . . ."); **see also A.V. v. S.T.**, 87 A.3d 818, 821 (Pa.Super. 2014) (reiterating that "Section 5328 provides an enumerated list of sixteen factors a trial court must consider in determining the best interests of the child or children when awarding any form of custody.").

Here, the trial court determined the best interest of Child by properly considering all relevant factors set forth in Section 5328 and, in so doing, determined that every relevant factor weighed in favor of awarding custody to Mother. (**See** notes of testimony, 9/1/17 at 97-104.) As such, the trial court awarded sole physical and legal custody of Child to Mother.

---

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

42 Pa.C.S.A. § 5328(a).

In this appeal, Father first complains that the trial court erred when it "did not properly consider the impact of a PFA on Father's contact with the [C]hild." (Father's brief at 7.) With respect to this issue, Father advances the following six-sentence argument:

> The [t]rial [c]ourt, on page 7 of its opinion, which is included as Appendix A, states that Father has no one to blame for not pursuing this action since 2015. However, the PFA Order was clear. No contact was allowed with [Mother] or Child. The PFA Order did say a custody action could be initiated, but doing so could have involved contact that might be considered a PFA violation. Father should not have the fact that he followed a Court Order held against him. It was an abuse of discretion.

Father's brief at 7-8.

In this argument, Father concedes that the PFA did not preclude him from seeking custody of Child, but he argues that "doing so could have involved contact that might be considered a PFA violation." (*Id.* at 8.) This argument is at odds with Father's testimony at the custody hearing. When first asked at that proceeding why he waited two years to file a custody action, Father answered, "Because I wanted to be sober and -- I wanted to be sober when I did -- I wanted to be sober to see my daughter." (Notes of testimony, 9/1/17 at 31.) Later in his testimony, however, Father claimed that he had been sober for "almost two years." (*Id.* at 66.) When asked again at the custody hearing why he waited two years to file a custody action, Father answered:

> Why didn't I? I had a lot of things going on at that point in time, ma'am. I had DUI court to attend to every week, I had many -- five AA meetings to do every week, I had two meetings with my probation officer every week. After my DUI is when I figured I was going to go on with and do my -- when I wanted to see my daughter.

*Id.* at 61.

Clearly, the record belies Father's first claim that the PFA somehow precluded him from seeking custody of Child. Consequently, this claim lacks merit. That being said, however, it is significant that Father fails to advance any argument in his brief regarding Child's best interest. With respect to Child's best interest, Father testified at the custody hearing as follows:

> Q. [Father], why is it in the best interest of your daughter that she reestablishes a relationship with you?
>
> A. Why not? I'm sober. I'm clean. I haven't drank in almost two years. Why wouldn't she -- why wouldn't I want to establish a relationship with my daughter?
>
> Q. I am not asking why you wouldn't. I understand completely why you would want to reestablish a relationship with your daughter. I want to know why that's in your daughter's best interest.
>
> A. Why wouldn't it be? I'm a good father. I never abused my daughter. I never laid a hand on my daughter.
>
> THE COURT: How do you justify that you have been a good father? How do you justify that statement? What have you done that shows that you've been a good father to any of your four children?

[FATHER]: That's true.

***Id.*** at 66-67. By his own testimony, Father admitted that he has done nothing to demonstrate that he has been a good father to Child or any of his other children. Because the record belies Father's first claim, it necessarily fails.

Father next complains that the trial court erred when it "rejected an evaluation by a qualified expert." (Appellant's brief at 8.) In this five-sentence argument, Father contends that:

> The [t]rial [c]ourt on page 8 of its opinion at Appendix A, mentions that the [guardian ad litem] attempted to introduce an evaluation. Mother objected but did not say why. Her objection should have been overruled under Pa.R.E. 103(a)(1). And while the [t]rial [c]ourt might not have given the evaluation a lot of weight, it should at least have considered the evaluation under Pa.R.E. 402. The [t]rial [c]ourt again abused its discretion.

Father's brief at 9.

Father has failed to provide any record citations to support his claim. On that basis alone, Father waives this claim on appeal. ***See*** Pa.R.A.P. 2119(c); ***see also J.J. Deluca Co. v. Toll Naval Assocs.***, 56 A.3d 402, 413 (Pa.Super. 2012) (reiterating that a failure to present any record citation to support a claim results in waiver). Nevertheless, we further note, that Father has also failed to develop a legal argument capable of meaningful appellate review. Specifically, Father fails to articulate why Rule 103(a)(1) would apply when that rule concerns preservation of a claim

of error in a ruling that admitted evidence. Pa.R.E. 103(a)(1) (requiring that a party claiming error in a ruling that admits evidence must, on the record, make a timely objection, motion to strike, or motion *in limine* and state the specific ground for the objection, unless it was apparent from the context). Father also fails to articulate why the evaluation was admissible under Rule 402, which addresses the general admissibility of relevant evidence. Therefore, even if Father provided record citations, Father would have waived this issue on appeal for failure to develop a legal argument. *See In re Lokuta*, 11 A.3d 427, 436 (Pa. 2011) (reiterating that a failure to develop issues results in waiver).

Even if Father did not waive this issue, however, the record belies Father's claim. Our review of the record reflects that the trial court entered an order on July 7, 2017, that directed Father, in relevant part,

> to have his assessment completed in writing, and submitted to counsel for [Mother] and the Guardian Ad Litem prior to the hearing. Unless the parties stipulate to the admission of the assessment, the individual conducting the assessment shall be present to testify. Without the assessment, the Court shall not award any type of custody to [Father] based on the Court's concerns regarding the safety of [C]hild.

Order of court, 7/7/17 at 2; docket no. 26.

The record reflects that the parties did not stipulate to the admission of Father's assessment by Laura Gargano. (Notes of testimony, 9/1/17 at 95.) Consequently, the July 7, 2017 court order required that Ms. Gargano

be present at the custody hearing and testify. The record reflects that Ms. Gargano was not present to testify because, according to Father, "she couldn't make it." (*Id.* at 98.)

Father finally complains that the trial court erred when it ignored a request for a bonding evaluation. In Father's seven-sentence argument on this issue, Father cites to notes of testimony from an alleged custody conference that took place on July 7, 2017. (Appellant's brief at 10-11.) Although we note that the transcript of that conference is not part of the certified record before us, Father claims that at this conference Mother requested a bonding evaluation. On the basis of Mother's alleged request, Father now complains that he "should have been given the option to make the request as well." (Appellant's brief at 11.) Nothing in the record before us demonstrates that Father was prevented from requesting a bonding evaluation. Therefore, this claim lacks merit.

Finally, we reiterate that the trial court determined the best interest of Child by properly considering all relevant factors set forth in Section 5328 and determined that every factor weighed in favor of awarding custody to Mother. In so doing, the trial court conducted the following analysis:

> THE COURT: [T]his case is unique in the regard that it is probably the only case that I have ever heard where every single factor the Court is to consider weighs towards one party.
>
> The Court has to balance what I believe to be the best interests of this [C]hild with the rights of a parent to be involved in [C]hild's life.

[Father], I believe you have been deceitful. In your abuse affidavit you failed to list two PFAs, one that resulted in a Final Protection From Abuse. You failed to list your involvement with Children & Youth Services in Florida which resulted in the involuntary termination of four -- three children. You failed to disclose your involvement with Children & Youth Services in Snyder County between 2012 and 2014.

And, quite frankly, the timing of your custody petition, while it may raise suspicion, there has not been sufficient proof to establish that your motive for filing a custody action was that you got wind of the termination proceedings which may in the long run be a benefit to you.

Quite frankly, it is commendable that you completed treatment court, you graduated, you're getting your life straightened out. You should be commended for that.

[FATHER]: I am.

THE COURT: The problem is our children don't wait for us to get our acts together. Your daughter is growing, and now she has developed a relationship with somebody else who has been a father to her.

[FATHER]: I know.

THE COURT: Quite frankly, you shocked me with your statement that you are a good father. That just shows you are so totally clueless as to what you have done to your daughter to get to where you're at today, but her formative years are almost gone. They develop quickly. They don't wait for us.

Your statements showed that you made you the priority to the sacrifice of your daughter. You didn't do anything with her while you were getting your act together. There's a lot of people in treatment court that are single parents that are

- 17 -

finding ways to deal with their issues but also deal with their children. You chose not to.

[FATHER]: I had a PFA on me for three years.

THE COURT: You did not file your custody action until a couple weeks before you graduated from treatment court. You could have filed a custody action at any time. You chose not to.

In any event, the Court finds that you have other children. You've had no contact with one. Three your rights were involuntarily terminated. One of the other things that I found very significant is [Mother's] statement that the two boys seem to be doing very well now that you are not around. I found that very interesting.

As far as other children on Ms. -- well, I will address her factors in a -- I will address the sixteen factors in a minute.

You have no extended family. You have alienated your family; and [your fiancé], while [your fiancé] presented extremely well today and is probably a good influence in your life, her one son is incarcerated and her two other sons have nothing to do with her. That's not a good sign.

You have not had any contact with [Child] since she was three years old, over two years, in key developmental times. You don't even know her. She probably doesn't even know you. And you have taken no action, nothing until May of this year to see her.

And you have an outstanding arrest warrant in Florida for something that if they decide that it is going to be changed to not an in-state, you're gone. I can't believe Snyder County Probation allowed you to go through their treatment court program with an outstanding bench warrant. I would be curious to hear from Ms. Kuhns, who I am going to call after this, to see whether she is aware of it.

You have multiple criminal convictions involving drugs, alcohol; well, substances. You have multiple issues regarding violence, PFAs.

I completely believe [Mother's] testimony regarding your last contact with [Child] and how that whole thing went. And because of that, our statute does not allow me to give you any type of physical custody until that assessment is done, and I told you what you had to do and you didn't do it. I don't have a choice by law. Quite frankly, I was torn and would have probably been inclined to at least some version of supervised custody, not frequent; but you didn't follow the Order. I can't give you custody by law.

In any event, the Court considered the factors in Section 5328.

"Which party is more likely to encourage and permit frequent and continuing contact between the child and another party?" I find that favors [Mother]. She's done that in the past in spite of [Father's] behaviors.

"The past and present abuse committed by a party or member of a party's household, whether there is a continued risk of harm," and "Which party can better provide adequate safeguards and supervision for the child?" Clearly we have a [PFA], multiple convictions of violence, even though this most recent one was dismissed, I assume as part of a plea agreement. I find [Mother's] testimony regarding the incident credible.

"Child abuse and involvement with protective services." I don't know the extent of that in Florida other than his parental rights were terminated which is an extreme measure, and the [PFAs] and finding of abuse.

"Parental duties performed by each parent on behalf of the child." Since two thousand and what,

fourteen, 2015, [Mother] has performed all of the parental duties.

"The need for stability and continuity in the child's education, family life, and community life; the availability of extended family; and the child's sibling relationships." [Mother] testified as to her current situation with her current husband. Her mother's here and involved. Her husband's here and involved. They have the pastor of the church here and involved. That is what we in dependency court are looking for for our safety net to build around our children. Where the phrase -- and you don't hear it as much anymore -- is it takes a village to raise a child. Clearly [Mother] has done that and built that around not just [Child] but all of her children; and the fact that her children are with her, well, except one that's of age, is no longer a child but an adult. The other cousins with her husband's family; the fact that [Child] has playmates, siblings around her. On [F]ather's side there's none. He has alienated them all or lost his parental rights.

[Mother], the same thing with the extended family and friends to take care of [Child], that clearly favors [Mother]. In fact there doesn't -- other than the past year, there's no stability on [Father's] side except for the past year. And he's to be commended for that. Hopefully he continues on this path of sobriety.

"The well-reasoned preference of the child." My understanding from [the guardian ad litem's] position is [C]hild doesn't really even know who her biological father is.

"The attempts of a parent to turn the child against the other parent, except in cases of domestic violence or reasonable safety measures are necessary to protect the child." She got a [PFA] by Judge Hudock saying that you were a danger to that [C]hild.

"Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs?" Clearly that's mom. Mom's been there for [C]hild. [Father's] been busy taking care of himself. And it appears [Child] is doing well, hitting -- in kingergarten, doing chores.

"The proximity of the residences." Mifflinburg to Middleburg is not that far apart. It's not really a factor in the Court's decision.

"Each party's availability to care for the child or ability to make appropriate childcare arrangements." [Mother's] husband is there and so are the extended family members.

"The level of conflict." While it may not exist now, it's only because of the [PFA], but the level of conflict in the past was very violent to the fault of [Father].

"History of drug and alcohol abuse." I have not heard of any drug and alcohol abuse by [Mother]. It is rampant from [Father] for at least a significant part of his life.

"The mental and physical condition of a party or a member of the party's household." I heard about [Father's] recent diagnosis of I believe it was bipolar. I didn't hear anything more, although, he's on four medications that he doesn't even know what they are. He knows he takes four pills a day. That is an issue that is frightening.

It's clear that [Mother] should have legal and primary physical custody. The question is, what contact should [Father] have or what type of custody rights should [Father] have. And the problem is when someone is convicted of certain offenses, the Court is to conduct an initial evaluation; and where the Court determines that counseling is [a] necessity, it shall appoint a qualified counselor.

> I allowed [Father] to obtain -- well, I actually in Subsection C in Section 5329 I ordered that he obtain further evaluation, and I told him what he had to do; and he didn't do it. . . . "The Court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that parent."

> I cannot make that determination because you didn't follow my order and have the evaluator present, and even though -- I suppose if there had not been the inconsistencies between the evaluator's report and the testimony today, I may have overruled [Mother's counsel's] objection and still considered it. But there's serious question of the validity of the evaluation or even the qualifications. I don't know this person. In fact I can't even read her name, and it is not written anywhere. So I don't have a curriculum vitae, a resume, anything to tell me who this evaluator is. I suppose the initials of her degree follow her -- well, no, her name's not even -- yeah, there aren't -- nothing to even indicate her degree and whether she's even qualified to do this.

> . . . .

> And now, this 1st day of September, 2017, for the reasons stated on the record, [Mother] is awarded sole legal and physical custody of the minor [C]hild . . . .

Notes of testimony, 9/1/17 at 97-104.

Our review of the record in this case demonstrates that the evidence supports the factual findings made by the trial court when it applied the 16-factor best-interest test to award custody of Child to Mother because that award was, and is, in Child's best interest. Accordingly, we discern no abuse

of discretion and affirm the order that awarded sole legal and physical custody of Child to Mother.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/20/2018